# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

January 27, 1999

Cecil W. Crowson
Appellate Court Clerk

EDITH CARMER SANNELLA,    )
    )
    Plaintiff/Appellee,    )
    )    Davidson Circuit
VS.    )    No. 78390
    )
JOSEPH JOHN SANNELLA,    )    Appeal No.
    )    01A01-9701-CV-00004
    Defendant/Appellant.    )

APPEAL FROM THE CIRCUIT COURT
FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE

For the Plaintiff/Appellee:

John J. Hollins, Jr.
Hollins Wagster & Yarbrough
Nashville, Tennessee

For the Defendant/Appellant:

Stephen W. Pate
Murfreesboro, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal concerns a husband's efforts to terminate his spousal support obligation following a twenty-year marriage. Shortly after his retirement, the husband filed a petition in the Circuit Court for Davidson County seeking to terminate his spousal support obligation because of the decrease in his income and the post-divorce increase in his former wife's income. The trial court denied the husband's petition after concluding that his retirement did not affect his ability to pay spousal support and that his former wife continued to need support. The husband has appealed. We agree with the trial court that the husband has not shown a substantial, material change in circumstances sufficient to justify terminating his spousal support obligation. Therefore, we affirm the denial of the husband's motion to terminate his spousal support obligation.

## I.

Joseph John Sannella and Edith Carmer Sannella, now both in their late 60s, were divorced in 1976 after over twenty years of marriage. The Circuit Court for Davidson County awarded Ms. Sannella a divorce based on cruel and inhuman treatment. The parties had four children, and trial court awarded custody of the two youngest children to Ms. Sannella and permitted the two oldest children to choose with which parent they desired to live. These children chose to live with Ms. Sannella.

Dr. Sannella established a successful practice as a pathologist in Nashville from which he earned in excess of $80,000 per year. Ms. Sannella did not work outside the home during the marriage even though she had a master of science degree in bacteriology and immunology. Rather, she stayed at home attending to her tasks as a wife and mother. After considering the factors relevant to an award of spousal support, the trial court directed Dr. Sannella to pay Ms. Sannella $1,250 per month in long-term spousal support until her death or remarriage.

Ms. Sannella remained in Nashville following the divorce and obtained a job that paid $6 per hour as a microbiologist with the State of Tennessee. Thereafter, she obtained her present employment at the Vanderbilt University School of Medicine

where she earns approximately $38,000 per year. Ms. Sannella has lived frugally since the divorce. She has used most of her discretionary income to build up her retirement fund. She also cares for one of the parties' adult children who suffers from psychological problems and who has moved in with her. Her house has fallen into such a state of disrepair that the house, appraised at $65,000, is worth less than the lot which would be worth $75,000 to $90,000 if the house were removed.

Dr. Sannella remarried following the divorce and moved to Utah. He established a successful solo practice and also co-founded Med-Arrow, Inc., an air ambulance service. His combined annual income during this time was between $115,000 and $144,000. In July 1985, Dr. Sannella tried unsuccessfully to convince the court to lower his spousal support. When his second marriage ended in divorce in 1989, he considered moving to Florida to be near his mother and even purchased a condominium there. However, when he failed to find suitable employment in Florida, he decided to remain in Utah.

Dr. Sannella scaled back his practice and began to work part-time in late 1994 and the early part of 1995. He officially retired in August 1994 because he was "tired," because the work had become difficult, and because he did not believe he was as sharp as he once had been. Dr. Sannella married for the third time and moved to Apollo Beach, Florida where his new wife was employed as the nursing director at a nearby hospital earning approximately $65,000 annually. One of his sons, who is mildly retarded, lives with him. Even though Dr. Sannella no longer actively practices as a pathologist, he and his present wife live a comfortable life in Florida. They own a $185,000 home with a pool and a $60,000 sailboat docked nearby, as well as a condominium. Their joint income tax return for 1995 stated that their gross income was $222,349.

On April 19, 1995, Dr. Sannella filed a petition to terminate his spousal support obligation. He alleged that a permanent and material change in financial circumstances rendered him unable to meet his alimony obligation and that Ms. Sannella no longer needed spousal support. Following a bench trial, the judge found Dr. Sannella's arguments unpersuasive and denied the petition. Dr. Sannella has appealed.

## II.

Dr. Sannella argues that the trial court erred by determining that his decreased income, coupled with Ms. Sannella's improved financial condition following the divorce, did not warrant terminating his support obligation. He specifically points to his recent retirement and Ms. Sannella's increased net worth and record of steady employment.

## A.

Courts cannot modify or terminate a spousal support award unless there has been a substantial, material change in circumstances since the entry of the previous support decree. *See* Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1997); *Brewer v. Brewer*, 869 S.W.2d 928, 935 (Tenn. Ct. App. 1993); *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). In order to be material, a change in circumstances must have been unforeseeable at the time of the decree. *See McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); *Elliot v. Elliot*, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991). It must also affect the obligor spouse's ability to pay or the obligee spouse's need for alimony. *See Bowman v. Bowman*, 863 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

The party seeking modification of a support obligation bears the burden of proving there has been a substantial, material change in circumstances and that the modification is warranted. *See Elliot v. Elliot*, 825 S.W.2d at 90; *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990). If the petitioner meets this burden, the court then utilizes the same factors in Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1998) that were considered in making the initial award to determine the appropriate modification. *See Brewer v. Brewer*, 869 S.W.2d at 936; *Norvell v. Norvell*, 805 S.W.2d 772, 774 (Tenn. Ct. App. 1990).

While Tenn. Code Ann. § 36-5-101(d)(1) permits the consideration of many factors, the recipient spouse's demonstrated need for spousal support is the single most important factor. *See Cranford v. Cranford*, 772 S.W.2d at 50; *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984). The obligor spouse's ability to pay is another important factor. *See Smith v. Smith*, 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995). An alimony recipient's increased income alone is not sufficient to

warrant reducing or terminating support, *see McCarty v. McCarty*, 863 S.W.2d 716, 720 (Tenn. Ct. App. 1992); *Norvell v. Norvell*, 805 S.W.2d 772, 775 (Tenn. Ct. App. 1990), nor may an obligor spouse avoid paying support by voluntarily assuming new financial obligations. *See Elliot v. Elliot*, 825 S.W.2d at 91; *Jones v. Jones*, 784 S.W.2d 349, 353 (Tenn. Ct. App. 1989).

Because support decisions are factually driven and involve considering and balancing numerous factors, we give wide latitude to the trial court's discretion. *See Cranford v. Cranford*, 772 S.W.2d at 50. We review a trial court's decision according to the familiar Tenn. R. App. P. 13(d) standard, and we will uphold the trial court's decision unless it is based on an improper application of the law or is against the preponderance of the evidence. *See Cranford v. Cranford*, 772 S.W.2d at 50; *Luna v. Luna*, 718 S.W.2d 673, 675 (Tenn. Ct. App. 1986).

**B.**

The record in this case provides no basis to second-guess the trial court's denial of Dr. Sannella's request to terminate his spousal support. When the parties divorced, Dr. Sannella's eventual retirement and Ms. Sannella's re-entry into the workforce were certainly foreseeable. After becoming a single parent with four children, Ms. Sannella had little choice other than to enter the workforce to provide immediate support for herself and her children and long-term support for herself. Ms. Sannella needed to increase her net worth because she did not receive any portion of Dr. Sannella's retirement benefits in the divorce proceeding. Thus, the parties' current circumstances are not the result of significant, unanticipated changes in circumstances.

We have also determined that neither Dr. Sannella's voluntary retirement nor Ms. Sannella's frugality affects Dr. Sannella's ability to pay spousal support or Ms. Sannella's need for support. At the time of divorce, Dr. Sannella was earning approximately $80,000 per year and had a net worth of approximately $59,000. His earnings steadily rose during his career to a regular income of between $115,000 and $144,000 in the 1990s. At the time of trial, his net worth had increased to $750,000, including $265,000 in a 401-K account, $100,000 of stock in Med-Arrow, Inc.,

$85,000 of equity in his marital residence, a $60,000 condominium, a $60,000 sailboat, $54,000 in his professional corporation, and other assets.

Although Dr. Sannella is now retired, he still earns $2,500 a month from his position with Med-Arrow, Inc. and his social security benefits. During the first quarter of 1996, he paid himself only $3,500 from his professional corporation, even though the corporation's gross income for 1995 was $78,245, and its revenues as of March 31, 1996, were $13,884. His joint checking account with his current wife carried a $40,000 to $50,000 balance every month. Dr. Sannella could not explain several large deposits made during early 1996, including two for approximately $5,000 and $8,500, which could not be attributed to either his or his current wife's regular sources of income.

Counting the support received from Dr. Sannella, Ms. Sannella receives $3,400 each month and has expenses of $3,543, creating a $134 monthly shortfall. Dr. Sannella's support payments constitute 36% of Ms. Sannella's income. She has managed to accumulate $296,000 in assets, including $50,000 inherited from her mother, an insurance policy on Dr. Sannella's life with an $87,000 cash surrender value to provide for one of the parties' children, a $43,000 individual retirement account, and her Vanderbilt pension valued at $88,000. Ms. Sannella has incurred a $28,000 debt to level the foundation of her house and plans to sell the house to avoid incurring additional repair expenses. Ms. Sannella plans to work as long as she can, but she will only be able to work until her seventieth birthday because of Vanderbilt's mandatory retirement policy. She also pointed out that her long absence from the workforce has significantly decreased her social security benefits and that she will be unable to support herself in retirement on her social security benefits alone.

Accordingly, we conclude that Dr. Sannella has failed to prove that the change in circumstances is material enough to justify terminating his spousal support obligation. His retirement from a lucrative medical practice, his purchase of a new home, and his remarriage were voluntary decisions that have not rendered him unable to continue to meet his support obligation. Under the facts of this case, Dr. Sannella has failed to provide justification for terminating Ms. Sannella's support.

## III.

Dr. Sannella also contends that the trial court erred by assessing $7,500 of Ms. Sannella's $9,670 in attorney's fees against him. Ms. Sannella argues that the trial court's award was correct and furthermore that we should award her the attorney's fees she has incurred as a result of this appeal.

In a divorce action, an award of attorney's fees is treated as alimony. *See Smith v. Smith*, 912 S.W.2d at 161; *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). The decision to award attorney's fees lies within the sound discretion of the trial judge, s*ee Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995); *Brown v. Brown*, 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994), and this court will not interfere with the trial judge's decision unless the evidence preponderates against it. *See Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988). A party is entitled to attorney's fees when he or she lacks sufficient funds to pay his or her legal expenses or would find it necessary to deplete other assets to do so. *See Brown v. Brown*, 913 S.W.2d at 170; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

Ms. Sannella, who already suffers from a $134 monthly shortfall, does not have sufficient funds to pay her attorney's fees and could only do so by depleting other assets. This is the fourth time that she has incurred legal expenses due to Dr. Sannella's unwillingness to pay his alimony obligation. We find no abuse of discretion on the part of the trial judge in awarding Ms. Sannella her attorney's fees. For the same reasons, we also award Ms. Sannella her attorney's fees associated with this appeal. On remand, the trial court should hear proof and set a reasonable fee for Ms. Sannella's attorney's services on appeal.

## IV.

We affirm the order denying Dr. Sannella's petition to terminate his spousal support and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Joseph John Sannella and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____ -8-
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE