# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### July 2000 Session

## MARY LYNN WRITESMAN v. MICHAEL LAKE WRITESMAN

**Appeal from the Circuit Court for Davidson County**
**No. 95D-1274    Muriel Robinson, Judge**

---

**No. M1999-00726-COA-R3-CV - Filed September 22, 2000**

---

This appeal is from the trial court's order denying Husband's Petition for Modification and sentencing him to thirty days in jail for criminal contempt. Husband attempted to show that there had been a substantial and material change in the relative financial positions of the parties and that his court ordered alimony obligation should be terminated or modified. Wife counter-petitioned for contempt of court, and Husband was, thereafter, charged with criminal contempt and found guilty for his failure to pay alimony. We agree with the trial court that Husband failed to show a material change in circumstances sufficient to justify terminating or modifying his alimony obligation. We also agree with the trial court's finding of criminal contempt and uphold its sentence of thirty days in prison for such contempt. Therefore, the ruling of the trial court on all issues presented on appeal is affirmed.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded.**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Jack Norman, Jr. and James L. Collier, Nashville, Tennessee, for the appellant,
 Michael Lake Writesman.

Gregory D. Smith, Nashville, Tennessee, for the appellee, Mary Lynn Writesman.

### OPINION

### I.    CASE HISTORY

The parties, Mary Lynn Writesman ("Wife") and Michael Lake Writesman ("Husband"), were divorced on 9 September 1996 in Davidson County, Tennessee. Wife was granted custody of their two minor children. Husband was ordered to pay child support in the amount of $1,136 per month until the oldest child turned 18 in June of 1997, at which time the child support would

decrease to $755 per month.  In addition, Husband was ordered to pay alimony *in futuro* of $1,000 per month increasing to $1,200 per month in June of 1997.  Husband was further ordered to pay the debt on Wife's 1995 Maxima as well as debts to the following creditors:  Dr. Tom Jones, First American Bank Master Card, Farm Credit Services, Service Merchandise and Sears.  The court ordered Husband to maintain a life insurance policy for $500,000 payable to Wife to insure the support obligation.  With regard to income, the trial court found that Husband was underemployed and had the ability to make $60,000 per year.  The court also anticipated that Wife would obtain employment and produce some income following the divorce.

On 16 February 1999, Husband filed a Petition for Modification alleging a substantial and material change in the parties' relative financial circumstances and ceased further alimony payments to Wife.  In support of this petition, he asserted that he had not made the anticipated $60,000 per year since the court's 1996 order and that he now owed additional sums of money as a result of the short fall in his income, including substantial back taxes and debts to family and friends.  In addition, Wife had secured gainful employment since the original divorce decree.  Based on these facts, Husband requested that the court reduce or suspend his alimony obligation.

Wife filed an answer to Husband's petition and counter-petitioned for contempt.  In her counter-petition she alleged six willful acts of contempt for failure to pay alimony from February through July of 1999, three willful acts of contempt for failure to pay her car note in May, June and July of 1999, and one willful act of contempt for failure to pay their daughter's medical expenses. She requested that Husband be jailed for not less than 100 days, ten days for each of the ten contempt violations.

At the hearing on Husband's petition for modification and Wife's counter-petition for contempt, the judge heard testimony from Husband regarding his employment status and income since the 1996 decree, his debts including tax debt and loans owed to friends and family, his personal and business expenses, and the significant short fall between his actual income and monthly expenses.  Proof presented by Husband showed a gross income of $63,720.43 in 1996, $83,151 in 1997, $68,349.25 in 1998, and an estimate of $81,000 for 1999.  Husband also put on proof of his net income stating that he had approximately $20,000 per year in business deductions and that after business deductions and taxes were taken out of his gross income, his net earnings averaged approximately $40,000 per year over the last four years.  Husband testified that he owed back taxes from 1996, 1997, 1998 and would owe additional taxes in 1999.  He claimed his tax debt was approximately $46,000; however, evidence was presented that Husband had as much as $20,000 in tax credits which had not been taken and which would substantially reduce his tax debt.

Husband also testified that he had incurred other new debt in addition to the new tax debt , including a $5,000 debt to a friend and a $26,780 debt to his parents for their assistance over the last four years.  However, other than checks written by his parents to various of his creditors, there was no proof that he actually owed the debt to his parents, nor was there any proof of the $5,000 debt to a friend.  The total amount of unsecured debt originally assigned to him by court order was approximately $45,000. His outstanding unsecured debt at the time of the hearing was around

$32,000.  There was also testimony that he had paid down much of this debt and then re-borrowed from the same sources.  At the time of the decree, there was a $21,000 balance on Wife's car note. That balance at the time of the hearing had been reduced to approximately $15,000.  Thus, there had been an overall reduction in his court ordered debt obligation.  He further agreed that most of his current debts were considered by the court in the original divorce decree.

On cross-examination Husband admitted that he had failed to make alimony payments from February through August of 1999 and that he was late on numerous car payments.  Further, Husband failed to cooperate with discovery.  Wife's attorney had requested copies of all his cancelled checks for the years of 1997 and 1998.  These were never produced.  Husband went on to testify that all grocery and household items were paid for in cash.  Therefore, other than his testimony, there was no way to prove amounts paid for personal and household expenses.  Even use of his credit card was only for cash withdrawals.

The court found that Husband's testimony, combined with that of his current wife, presented an extremely implausible scenario of household management.  These two individuals testified to a total separation of assets wherein Husband paid half of the house note, contributed only $150 per month for food, and paid all utilities.  No other money was contributed to the family by Husband. He did not give his current wife any money for living expenses or personal items and did not assist in payment of her new truck.  His current wife paid all of her expenses (including half the house note, truck note, groceries for her and her children, clothes and personal items for her and her children) out of a $800 per month child support check which she received from her ex-husband and a bank account, which totaled $53,000 at the time of her divorce and totaled approximately $10,000 at the time of trial.

Wife testified that she currently had custody of their one minor child and their other child was attending college.  Although she was not employed at the time of the divorce, pursuant to the judge's order, she had secured employment and was working in a position where she was paid by the hour with a maximum of 7 ½ hours work per day.  She still suffered with Crohn's disease, as she did at the time of the parties' divorce.  Her net income was approximately $2,148 per month.  She went on to testify regarding her monthly expenses stating she needed an additional $1,422 per month to cover the bills for her and her minor child.

The court issued its ruling finding no material change in circumstances.  Husband was held in willful criminal contempt and sentenced to 30 days in jail.  The court order stated as follows:

1.    There have been no material changes in circumstances since the entry of the Final Decree of Divorce in this case.  Mr. Writesman still does not pay his income taxes; Mr. Writesman designs how [h]is income is earned, spent and reported to the Internal Revenue Service; Mr. Writesman has a history of failing to pay taxes; and Mr. Writesman continues to violate the orders of this court.

2. Mr. Writesman, by his own testimony, has shown an ability to earn sufficient income to pay down his obligations since the entry of the Final Decree of Divorce. However, Mr. Writesman pays down certain credit card debts and line of credit debts and then runs those same debts back up. Mr. Writesman deals in cash and pays the expenses he wants to pay. Mr. Writesman testified that he wants to stop paying alimony so that he can pay taxes.

3. The court previously found that Mr. Writesman had the ability to earn $60,000 per year. Since the entry of the Final Decree of Divorce, Mr. Writesman has shown the ability to earn this amount.

4. Mrs. Writesman continues to need the alimony awarded to her pursuant to the Final Decree of Divorce.

5. Mr. Writesman is in willful criminal contempt of the Final Decree of Divorce for failure to pay alimony as ordered.

6. Mr. Writesman has not shown that he is unable to pay the alimony ordered to be paid pursuant to the Final Decree of Divorce.

With these findings the court dismissed Husband's Petition for Modification and sentenced him to thirty days in jail for criminal contempt.

## II. ISSUES

Husband has presented three issues for our review.

1. Whether the trial court erred in not granting the appellant\Husband's application for a reduction and/or termination of alimony payments.

2. Whether the trial court erred in finding the appellant\Husband in willful contempt.

3. Whether the trial court erred in sentencing the appellant\Husband to jail for a period of thirty days for criminal contempt.

## III. DISCUSSION

1. Modification of Alimony.

Under Tennessee Code Annotated section 46-5-101(a)(1)(Supp. 1997), the courts cannot modify or terminate an award of spousal support unless there has been a substantial and material change of circumstances since the entry of the previous support order. For this change in circumstances to be material, it must have been unforeseen at the time of the previous order.

*See Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). In addition, we review the finding of facts of the trial court *de novo* upon the record with a presumption that those findings are correct unless a preponderance of the evidence shows otherwise. Tenn. R. App. P. 13(d); *Elliott v. Elliott,* 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991). We also give deference to the trial judge's determination of witness credibility.

> The findings of the trial court which are dependent upon determining the credibility of witnesses are entitled to great weight on appeal. The reason for this is that the trial judge alone has the opportunity to observe the manner and demeanor of the witness while testifying. Indeed, the trial judge, on an issue which hinges on witness credibility, will not be reversed unless there is found in the record concrete and convincing evidence, other than the oral testimony of the witnesses, which contradicts the trial court's findings.

*Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991) (citations omitted); *see also Brewer v. Brewer*, 896 S.W.2d 928, 934 (Tenn. Ct. App. 1993).

It is obvious from review of the record, including the original divorce decree and the decree entered following the 1999 hearing, that the judge found Husband totally noncredible. In its original order the court made written findings and stated:

> [T]hroughout this entire case, [the husband] has attempted to defeat the discovery process, has not cooperated, has not supplied the Court or the attorneys with the accurate information, and really has not been fair in that regard at all. The Court finds that from the evidence produced, that the husband's finances are inconsistent with the tax returns that the husband has filed. The court is of the opinion, and has no alternative, but to declare the husband a noncredible witness. . . .

At the conclusion of testimony on September 8, 1999, the judge reiterated her opinion of Husband's untrustworthiness. "Basically, Mr. Writesman pays the expenses he wants to pay. He deals in cash. He did at the time of the divorce; he still does now." As the trial judge had the opportunity to judge Husband's credibility, we will give great deference to the court's determination that Husband was noncredibile.

The court found that the tax debt was not a new obligation, as Husband did not pay his taxes prior to the divorce and still refused to pay taxes. Further, Tennessee courts have found that tax consequences are considered in alimony obligations, and thus not "unforseen" at the time of the court order. *Elliott,* 825 S.W.2d at 91. The only actual changed circumstances found by the court were alleged debts to his parents and a friend. However, this court has found that voluntary assumptions of new financial obligations do not constitute a change in circumstances. *Sannella*, 993 S.W.2d at 76; *Jones v. Jones*, 748 S.W.2d 349, 353 (Tenn. Ct. App. 1989). Therefore, we agree with the trial court that Husband's new debts do not constitute a material change in circumstances.

Husband's own testimony showed that he made in excess of $61,000 each year since the court's original decree. Further, his testimony regarding actual income earned, taxes owed, and spending habits was unreliable due to his lack of credibility with the court. With regard to the financial obligations owed at the time of the original decree, it was shown that those financial obligations had actually decreased due to payments made over the last four years and that Husband had taken out additional credit on these same financial obligations to keep their balance higher than it would have otherwise been.

Husband also argued that Wife's current income was a substantial and material change; however, the trial judge contemplated Wife's obtaining a job following her divorce, so this fact does not constitute a substantial and material change in circumstances. Tennessee courts have repeatedly held that the fact of a wife finding gainful employment following the divorce is not itself a material change in circumstances. *See, e.g., Elliott*, 825 S.W.2d at 91.

> Although the need of the spouse is one of the primary factors in determining the proper amount of alimony, modification of alimony based solely on a wife's increased earnings is not proper unless the husband introduces evidence indicating that the amount of alimony initially awarded was based upon a presumption that the wife would not continue to increase her income through the pursuit of her career.

*McCarthy v. McCarthy*, 863 S.W.2d 716, 720 (Tenn. Ct. App. 1992); *see also Sannella*, 993 S.W.2d at 76. Wife is still affected with Crohn's disease, is still unable to make enough income to support her and the parties' minor child, and is still in need of the alimony assistance. It was noted by the court that the parties enjoyed an extremely high standard of living when they were married, and "[t]here is no evidence in this record to indicate that Wife is now able to enjoy a higher standard of living as a divorced parent." *Seal v. Seal*, 802 S.W.2d 617, 621 (Tenn. Ct. App. 1990).

The evidence in the record does not preponderate against the trial judge's finding of facts regarding Husband's financial situation and credibility. Husband's lack of credibility is well supported by the record, as is the court's finding of no material change in circumstances.

2.      Willful contempt.

The trial court found Husband in willful criminal contempt for failure to pay alimony. He must now prove his innocence to the appellate court by a preponderance of the evidence.

> In the trial of a criminal contempt case, the defendant is presumed to be innocent until he is found guilty beyond a reasonable doubt. But once the defendant is found guilty and the case is appealed, he is burdened with the presumption of guilt, and in order to obtain a reversal, he must overturn this presumption by showing that the evidence preponderates in favor of his innocence.

*Robinson v. Air Hydraulics Eng'g Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (1964) (citations omitted). The Tennessee Court of Criminal Appeals has stated the standard of review as follows:

> When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the proof adduced at the trial is sufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt. T.R.A.P. 13(e). We do not re-weigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom.
>
> Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court.

*State v. Creasy*, 885 S.W.2d 829, 831 (Tenn. Crim. App. 1994) (citations omitted). Thus, under Tennessee Rules of Appellate Procedure 13(e), "this Court must review the record to determine if the proof adduced at trial supports the findings of the trier of fact of guilt beyond a reasonable doubt." *Black v. Blunt*, 938 S.W.2d 93, 94, 399 (Tenn. 1996).

Upon review of the record, we first take note of the judge's determination regarding Husband's credibility. Since the initial trial, and before, Husband has insisted on paying most of his expenses in cash which make his transactions untraceable. The court found his tax returns unreliable and noted that he had not produced checks requested in discovery to show expenditures. Husband's own testimony and evidence showed income in excess of $60,000 every year since the original decree for alimony; however, immediately upon filing his petition to modify, Husband ceased paying alimony, choosing instead to pay tax obligations which may or may not be owed to the federal government.

Husband certainly had the funds to pay alimony as the court found.

> He has paid under this decree since 1996. His testimony is he has paid all the alimony payments in 1997 and 1998, but he quit right as he filed this petition. He has always known of his obligation under this decree yet he spent years trying to get out of it. He's actually aware of his child support and alimony obligations, yet he remarried a new wife with two children. His testimony is that he does not support his wife but then he does say in his testimony that he does pay one half of her house note and he does pay all of the utilities from which his new wife receives the benefits. And he gives her $150 per month groceries. There again, he pays the debts and obligations he desires to.

He chose, instead of paying Wife's alimony, to pay an unsubstantiated tax debt. We find sufficient evidence to support the trial court's finding of willful contempt in failing to pay his alimony obligation for six months.

3.    Contempt sentencing.

After finding Husband in willful violation of the court order requiring alimony payments, the trial court convicted Husband of criminal contempt and ordered him to spend thirty days in the Metropolitan Jail, to be served on work release. Husband appeals this sentence arguing that the trial court cannot impose a sentence in excess of ten days without finding that he was guilty of multiple counts of contempt. We agree with Husband's statement of the law governing punishment of contempt; however, we find that the trial court correctly applied that law.

In Wife's counter-petition for contempt, she specifically stated that Husband had committed six willful acts of contempt for failure to pay alimony and requested that he be sentenced to ten days in jail for each contempt pursuant to section 29-9-103 of the Code.

> (a) The punishment for contempt may be by fine or by imprisonment, or both.
> (b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29-9-108, all other courts are limited to a fine of ten dollars ($10.00).

Tenn. Code Ann. § 29-9-103 (1999). In its order, the trial court found that Husband was in willful contempt for failure to pay alimony as ordered. This finding of contempt included all six willful acts of contempt alleged by Wife in her complaint, and thus Husband could have been sentenced to jail for as long as sixty days for his failure to pay alimony each of the neglected six months.

Unless abuse of discretion can be shown, appellate courts will not modify a punishment imposed for contempt by a trial court. "Appellate courts are loathe to interfere or modify the punishment imposed in contempt proceedings because such determinations lie within the sound discretion of the court." *Herrera v. Herrera*, 944 S.W.2d 379, 393 (Tenn. Ct. App. 1996). As the trial court is obviously fed up with Husband's disregard for its authority, we feel that it exercised great restraint in only sentencing Husband to thirty days in jail. Wife alleged six counts of contempt for failure to pay alimony, and the court found the defendant guilty of this failure to pay. The sentencing was within the discretion of the court, and we find no abuse of discretion.

4.    Conclusion.

We find that the evidence does not preponderate against the court's determination that there was no material change in circumstances which would justify a modification of the original alimony

award. Husband has made at least $60,000.00 per year since the original court decree. The fact that he would owe taxes and require living expenses was contemplated by the court. Any new debt incurred by Husband was not a material change of circumstances, nor was Wife's current income, as this was also contemplated by the court in its original order. We further affirm the court's ruling that Husband's failure to pay alimony was willful. Husband has shown the ability to pay since the original decree but simply determined other personal debts to be more important than the court ordered alimony. The trial court showed no abuse of discretion in its contempt sentencing. Wife alleged six willful acts of contempt for failure to pay alimony for which Husband was convicted by the trial court. It was within the trial court's discretion to determine appropriate sentencing within the bounds of Code section 29-9-103. Therefore, the trial court's ruling on all issues presented for appeal is hereby affirmed. Costs are assessed against Husband. The case is remanded to the trial court for collection of costs and such other action as may be determined necessary by the trial court.

_____
WILLIAM B. CAIN, JUDGE