IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2002 Session

## THOMAS JAMES MILAM, JR. v. DONNA LISA VINSON MILAM

**Appeal from the Circuit Court for Davidson County**
**No. 96D-2378     Muriel Robinson, Judge**

**No. M2001-00498-COA-R3-CV - Filed April 23, 2002**

By decree the husband was ordered to pay $4500 per month in child support and $2500 per month in alimony for forty-eight months. After a change in his employment, Husband petitioned the court for a reduction in alimony and child support. The trial court denied the petition and ordered the husband to pay the wife's attorney's fees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and DON R. ASH, SP. J., joined.

Helen Sfikas Rogers and Thomas F. Bloom, Nashville, Tennessee, for the appellant, Thomas James Milam, Jr.

D. Scott Parsley, Nashville, Tennessee, for the appellee, Donna Lisa Vinson Milam.

### OPINION

### I.

The parties were divorced on August 13, 1997. The decree ordered Mr. Milam to pay $4500 per month to support the parties' two minor children and $2500 per month in rehabilitative support for forty-eight months. On November 2, 2000, Mr. Milam petitioned the court for a reduction in child support and alimony alleging that he was unemployed.

The proof developed at a hearing on January 16, 2001 showed that at the time of the divorce Mr. Milam was employed by Heritage House, a division of Southwestern Great America Corporation. Heritage House engages in direct mail sales of musical collectibles and books. Mr. Milam's compensation package included a base salary of $100,000 and a bonus based on the profitability of the company. In 1996 he earned $216,797 in salary and at the time of the divorce he

was earning $252,000 per year ($21,000/month). In addition he had acquired a considerable estate consisting of real property, a retirement account, a wine collection, and stock in the company.

After the divorce Mr. Milam continued to prosper. He bought a new home, remarried, and added to his wine collection. However, in 1999 the principal owners of Heritage House decided to sell the company because normal market factors made the performance of the company uncertain. Mr. Milam sought a buyer for the company but his efforts ultimately failed, and in late September of 2000, he negotiated a severance package separating him from his employment.

The package included a severance stipend of $83,333.33 payable by the end of the 2000 calendar year, an additional $8000 in lieu of profit sharing for the year 2000, and $206,381.78 to redeem his company stock, payable in five equal annual payments. The unpaid balance on the stock redemption payments carries interest at eighty percent of the "Base Rate of Suntrust Bank in Nashville, Tennessee."

By the date of the hearing, Mr. Milam had been employed by the Wine Auction, a project of the American Cancer Society, at a salary of $100,000 per year plus a bonus if he substantially increased the income from the annual event. He testified that the increase was unlikely. Otherwise, he was still looking for a permanent position that was comparable to the one he left at Heritage House. To tailor his expenses to his income he and his new wife had quit buying wine for his collection, quit eating out so often, quit making contributions to his church, and had no plans to take a vacation in 2001. He had sold an expensive automobile and had attempted to sell part of his wine collection. He no longer hires a housekeeper.

The trial judge denied the petition to modify the child support and alimony payments. The court stated the following reasons:

1. The Court finds that Mr. Milam has sufficient assets, whether he is working or not, to comply with this order. What he has proven is that he knew of the obligation required by the final decree at the time there was some talk of terminating his employment at Heritage House. The Court finds that Mr. Milam comes into court today with a net worth of over $2,000,000.00 and by his own testimony, he has borrowing power.

2. The Court finds that Mr. Milam voluntarily entered into the severance agreement, which the Court can see why he did so. He made a pretty good deal there. Further, with the severance package, he can comply with this order. He is an executive. He is no stranger to Nashville. The Court feels very confident that he is going to get a position that is at least comparable to what he had. The Court finds Mr. Milam's unemployment to be temporary. Mr. Mosely, the CEO of the company says they would hire him back. The Court finds absolutely no proof that he was being fired or anything, it was just a company decision and he negotiated a severance package.

3.    The Court finds that Mr. Milam comes before this Court with equity in his home of $250,000.00. The Court finds that Mr. Milam, subsequent to the divorce, purchased an expensive house and spent several hundred thousand dollars on furniture and in making improvements. This Court in good conscience cannot allow Mr. Milam to keep those assets to the detriment of his children. So perhaps when he liquidates such items and still hasn't got a job, he may be in a better position to file a petition to modify his support obligations. The Court further finds that Mr. Milam's testimony and financial statements demonstrate that he has obligated himself to a house note of $3,346.00 monthly. Therefore, the Court in good conscience cannot find that Mr. Milam does not have the wherewithal to comply with this order.

4.    The Court further finds that Mr. Milam quitclaimed one-half interest in his home to his new wife and support of his new wife is a voluntary obligation, along with her children from a previous marriage coming into the home and the Court cannot subordinate Mr. Milam's primary obligations to his former wife and children to those of a new wife and step-children, his secondary obligation. It is, therefore, **ORDERED, ADJUDGED AND DECREED** that based on the evidence produced by Mr. Milam, that the Petition to reduce alimony and child support is dismissed.

In addition, the court ordered Mr. Milam to pay $5,000 of Ms. Milam's attorney's fees and two-thirds of the court costs. Ms. Milam was ordered to pay the balance of the court costs and the rest of her attorney's fees.

## II.
### CHILD SUPPORT

After an initial award of child support the modification of that award is governed by Tenn. Code Ann. § 36-5-101(a)(1).

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e) , between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

A significant variance is defined in the regulations as a change in support of "at least 15% if the current support is one hundred ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R & Regs., ch. 1240-2-4-.02(3)(1994). But a downward modification should not be ordered if "the obligor is willfully and voluntarily unemployed or underemployed."

Whether an obligor parent is voluntarily unemployed or underemployed depends on a number of factors. It is intensely fact-dependent and "can only be made after consideration of all the circumstances surrounding that parent's past and present employment or business activities." *Ralston v. Ralston*, No. 01A01-9804-CV-00222, slip op. at 7 (Tenn. Ct. App., Aug. 3, 1999). We do not believe that the record supports a finding that Mr. Milam is voluntarily underemployed. At the time of the hearing he had actually been separated from his employment at Heritage House for only about four months. It is undisputed that the sagging fortunes of the business was the cause of his separation. But he had taken a job that paid him a substantial salary, and he continued to look for a job that was comparable to the one he left.

A finding that Mr. Milam is not voluntarily underemployed, however, does not mean that he is automatically entitled to a reduction in child support. The child support guidelines require the courts to take into account an obligor parent's gross income from any source including "wages, salaries, commission, bonuses ... dividends, severance pay, pensions, interest . . . capital gains." Tenn. Comp. R. & Regs. Ch. 1240-2-4.03(3)(a)(1994). The obligor's income from fluctuating sources must be averaged and added to his/her fixed salary. Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(b). Since the guidelines are silent on how to average the fluctuating income, the courts approach the problem on a case-by-case basis. *See Alexander v. Alexander*, 34 S.W.3d 456 (Tenn. Ct. App. 2000).

The record shows that Mr. Milam earned $283,818 in wages in 1997 and reported a capital gain of $382,073 for a total income of $665,891. In 1998 his wages amounted to $418,176 and his capital gains to $1,514,916 for a total of $1,979,128. In 1999 he reported a total income of $567,416, consisting of $396,007 in wages and $161,737 in capital gains. The record does not contain his tax returns for 2000, but he worked until the last of September and then received $83,333.33 in the severance stipend plus $8,000 in lieu of profit sharing for the year.

We agree with the lower court that when the hearing was held in January of 2001 the court could not conclude that Mr. Milam's income had decreased to a point significantly below a level that would require him to pay support in an amount of $4500 per month. His average gross income for any calendar year – including 2000 – was significantly higher than that. Based on what we can predict for the year 2001 he would have earned $100,000 in salary and would have received the first $40,000 payment on the note representing the buyout of his stock.

We conclude that Mr. Milam has not made a case for reducing his child support.

## IV.
### ALIMONY

Some of the same considerations go into resolving the dispute over Ms. Milam's rehabilitative support. The final decree awarded Ms. Milam $2500 per month for a period of forty-eight months "to defray Ms. Milam's future educational expenses and to allow her to become rehabilitated." Tenn. Code Ann. § 36-5-101(a)(1) allows the court to increase or decrease the

allowance "only upon a showing of a substantial and material change of circumstances." Support decisions are factually driven, therefore the appellate courts give wide latitude to the trial court's discretion. *Sanella v. Sanella*, 993 S.W.2d 73 (Tenn. Ct. App. 1999).

"The factors set forth in Tenn. Code Ann. § 36-5-101(d), applicable to the initial grant of spousal support and maintenance, where relevant, must be taken into consideration in determining whether there has been a change in circumstances to warrant a modification of the alimony obligation." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). "[T]he need of the spouse receiving the support is the single most important factor." *Id.*; *see also Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). The ability of the other spouse to pay the obligation is also important. *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996).

In this case, the proof does not show any change in Ms. Milam's need for the support, and we conclude that Mr. Milam still has the ability to pay it. It may be true that Mr. Milam's monthly income has been reduced, but the $2500 payments to Ms. Milam will continue for only a few more months. It is not clear from the record when the forty-eight month period started but we assume that in January of 2001 twelve installments remain unpaid. That would amount to a total of $30,000. Mr. Milam's financial statements showed that in January of 2001 he had a net worth of $1,465,333.00, after receiving well over $3,000,000 in the years since the divorce. Therefore, we conclude that the trial judge should be affirmed on this issue.

## V.
### ATTORNEY'S FEES

Tenn. Code Ann. § 36-5-103(c) allows the courts to award attorney's fees to one party or the other in cases involving enforcement of decrees for alimony or child support. The award is in the discretion of the court. *Deas v. Deas*, 774 S.W.2d 167 (Tenn. 1989). The ability of either party to pay is not determinative as long as the award is just and equitable under the facts of the case. *Sherrod v. Wix*, 849 S.W.2d 780 (Tenn. Ct. App. 1992).

Mr. Milam argues that Ms. Milam was the cause of much unnecessary litigation since the original divorce, and it is inequitable to make him pay for her efforts. We think, however, that the trial judge took all the circumstances in this case into account in making her decision. Therefore, we cannot say that she abused her discretion.

The judgment of the court is affirmed, and the cause is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Thomas F. Milam, Jr.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

-5-