# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 14, 2004 Session

## THOMAS WAYNE STORM v. JANE ANN STORM

**Appeal from the Circuit Court for Williamson County**
**No. 1-98475      Russ Heldman, Chancellor**

---

**No. M2002-02882-COA-R3-CV - Filed August 31, 2004**

---

When the parties divorced in 1999, they entered into a marital dissolution agreement that was incorporated into the final divorce decree. That agreement acknowledged that the alimony payments agreed to "more than likely may have to be modified" if Husband lost his job or his insurance license. In this modification of alimony proceeding, the trial court found Husband had lost his job and was unable to find employment with comparable income. The court interpreted the MDA as authorizing it to reduce the amount of monthly payments but not to reduce the total amount due. We interpret the agreement as allowing modification of the total obligation and remand for reconsideration in light of this holding.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part, and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Jay R. Slobey, Nashville, Tennessee, for the appellant, Thomas Wayne Storm.

Grant C. Glassford, Nashville, Tennessee, for the appellee, Jane Ann Storm.

## MEMORANDUM OPINION[1]

The parties were divorced by order entered October 4, 1999. That order approved and incorporated a Marital Dissolution Agreement which provided that Mr. Storm would pay Ms. Storm

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

alimony of $6,000 per month for the first five years after the divorce and $5,000 per month for the next ten years. The MDA specifically provided that the alimony payments would cease only upon Wife's death or the expiration of fifteen years, whichever occurred first. However, the MDA also specifically provided:

> Both parties acknowledge that the alimony payments agreed to above are conditioned upon Husband's income derived from having and retaining an active insurance license in the State of Tennessee and being employed by Franklin Life Insurance Company. If Husband loses his position with Franklin Life and cannot find other employment that provides a comparable income, Wife is aware that these payments more than likely may have to be modified.

At the time of the divorce Mr. Storm was a regional manager for the successor to Franklin, AIG. At the end of 2001, Mr. Storm was given the option of leaving the company or taking a position as an area manager, as opposed to continuing as regional manager. He opted to stay as area manager, but his income was reduced significantly. He then entered into agreements with other insurance companies in an attempt to increase his income. When AIG discovered these agreements, it terminated its contract with Mr. Storm, and disputes over amounts due to and from AIG arose.

Mr. Storm filed a petition to modify his alimony obligation due to his involuntary loss of employment and income. The motion to modify was set, Ms. Storm filed a petition for contempt, and both petitions were heard together.

The trial court subsequently entered an order finding that Mr. Storm had involuntarily lost his employment and, consequently, was not in willful contempt. Although the court specifically found that Mr. Storm had lost the job he held at the time of the divorce decree and could not find other employment providing comparable income, the court held that it had no authority to modify the total amount of alimony Mr. Storm was obligated to pay Ms. Storm. However, the court also held that it had the authority to modify the alimony payments if it did not change the total amount due, $960,000. Accordingly, the court lowered the monthly alimony payments to $2500 per month beginning September 1, 2002, and for 302 months thereafter. On the 303rd month, Mr. Storm is to pay $1,000. Thus, the court lowered the amount of each payment but extended the duration of the obligation to make payments.

The court also found that Mr. Storm had paid $8,000 in alimony in 2002 and was $40,000 in arrears. It granted Ms. Storm a judgment for that amount and ordered that it be paid on or before August 22, 2004.[2] Mr. Storm has not challenged the arrearage judgment on appeal.

---

[2]The court also found Mr. Storm was $5,392 in arrears for health insurance premiums he had not reimbursed Ms. Storm, gave her a judgment for that amount, and ordered that it be paid by August 22, 2004.

# I. MODIFICATION OF AWARD

The trial court's reasoning is explained in its comments made at the end of the hearing. First, the court determined that the parties had agreed in their MDA to a kind of alimony that was not purely alimony *in futuro* or rehabilitative alimony. Consequently, general principles allowing modification of those types of alimony did not apply.

However, the court found that Mr. Storm's loss of his job and inability to find employment with comparable income satisfied the condition incorporated into the alimony modification provision of the MDA. The court then interpreted that provision as allowing modification of "alimony payments" only. The court stated, "It doesn't say the alimony may have to be modified. It just says the payments."[3]

A marital dissolution agreement is subject to the same rules of interpretation as any other contract. *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001). Interpretation of a written agreement is a question of law, and we review a trial court's interpretation *de novo* with no presumption of correctness. *Guiliano v. CLEO, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). This court must review the document ourselves and make our own determination regarding its meaning and legal import. *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993). "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). That intent is found, in the first instance, in the language of the agreement itself.

The trial court found that Mr. Storm had involuntarily lost the job he held when the divorce decree was entered. The evidence does not preponderate against that finding. Tenn. R. App. P. 13(d). The court also found that this circumstance triggered the modification provision of the MDA as incorporated into the decree. We agree with that interpretation of the agreement.

---

[3]The court felt particularly constrained by two provisions in the MDA prohibiting modification except by written agreement executed by the parties and approved by the court. The two provisions stated:

> A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement, and approved by the Court if such approval is required. Failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

> A modification or waiver of any of the provisions of this agreement shall be effective only if made in writing and executed with the same formality as this agreement. Failure of either party to insist upon strict performance of any of the provisions of this agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

However, we cannot interpret the modification provision as creating a distinction between the amount of each payment and the total amount due. The parties did not agree that Mr. Storm would pay Ms. Storm $960,000. Instead, they agreed that:

> Commencing October 1, 1999, Husband shall pay to Wife as alimony the sum of Six Thousand Dollars ($6,000) per month. Wife shall receive twenty-six (26) alimony payments per year, every other week, by electronic funds transfer into an account for which she shall provide Husband. During the first five (5) years of alimony payments, each payment shall be for $2,769.23. Said payments shall continue until Wife's death or the completion of Sixty (60) Months, whichever shall first occur.

> Commencing July 1, 2004, Husband shall pay to Wife as alimony the sum of Five thousand Dollars ($5,000) per month. Wife shall receive twenty-six (26) alimony payments per year, every other week, by electronic funds transfer into an account for which she shall provide Husband. Each payment shall be for $2,307.69. Said payments shall continue until Wife's death or the completion of One Hundred and Twenty (120) Months, whichever shall first occur.

> The parties expressly intend that all alimony payments provided for in this paragraph are to be made even if Wife re-marries and shall terminate only upon her death, or the conclusion of the One Hundred and Eighty Months, whichever shall occur first. The parties acknowledge that the payment of alimony as set forth in this agreement is the settlement of a disputed claim and supported by good and adequate consideration.

Thus, the terminology of the modification provision, "alimony payments," is the same as that used in the provisions creating the obligation. Interpreting the language the parties chose to use, we see no distinction between the alimony obligation in total and the payments by which that obligation is to be met. The alimony payments, in total as well as individually, were conditioned on Mr. Storm's retaining his job.

We agree with the trial court that the parties did not agree to alimony *in futuro* as that term has been defined by law. Consequently, the principles allowing modification of an alimony *in futuro* award upon a showing of a substantial and material change in circumstances do not apply. However, the parties did agree that a modification might be warranted if one particular change in circumstances occurred.[4] Where an MDA provides for resolution of an issue, such as modification upon particular circumstances, "courts should defer to the provision of the MDA, unless it would be unconscionable

---

[4]Because of the modification provision, we conclude the parties did not intend the alimony to be alimony *in solido* as argued by Ms. Storm.

to do so." *Bogan*, 60 S.W.3d at 730-31, citing *Towner v. Towner*, 858 S.W.2d 888, 892 (Tenn. 1993).[5]

Because the specified change occurred, Mr. Storm's alimony obligation was subject to modification. The trial court had authority to modify the entire obligation. A substantial and material change of circumstances triggering the authority of the court to modify a spousal support award does not, however, automatically result in a modification. It merely allows the party seeking the modification to demonstrate that, under the circumstances shown, a modification is appropriate. *Bogan*, 60 S.W.3d at 730. Actual modification is addressed to the trial court's discretion upon consideration of the statutory factors relevant to an initial award of alimony. *Id.* However, unlike in an initial award situation, the ability of the obligor spouse to provide support must be given equal consideration to the obligee spouse's need. *Id.*

The trial court obviously found that a reduction in Mr. Storm's monthly obligation was justified under the evidence presented including his substantially reduced income. The evidence does not preponderate against that finding. Additionally, "A trial court's decision to modify support payments is given 'wide latitude' within its range of discretion." *Id.* at 727. However, because the trial court acted with the understanding it could not alter the total alimony obligation, the case should be remanded for reconsideration by the trial court in view of this court's holding. The decision whether or not to hear new evidence on current circumstances is left to the discretion of the trial court.

## II. ATTORNEY'S FEES

Mr. Storm also challenges the trial court's award of attorney's fees to Ms. Storm, arguing that she has the ability to pay those fees and, since fees are considered alimony, need and ability to pay are the determining factors. Indeed, where alimony is awarded, an award of attorney's fees "is conditioned upon a lack of resources to prosecute or defend a suit in good faith. . . ." *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 751 (Tenn. 2002), quoting *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983). [6] The factors listed in Tenn. Code Ann. § 36-5-101(d)(1), *i.e.*, factors relevant to the court's consideration of an award of alimony, must also be considered in the award of attorney's fees. *Langschmidt*, 81 S.W.3d at 750-51. Consequently, a spouse with adequate property and income is not entitled to an award of additional alimony to compensate for attorney's fees and expenses.

---

[5] Both parties testified that at the time the MDA was being negotiated, there was some concern that Mr. Storm might lose his insurance license. Mr. Storm also testified that he was concerned he might lose his job. The modification provision was included because of these potential developments. Absent a provision covering such a foreseeable change, it probably would not be considered material and would not trigger a consideration of modification. *Bogan*, 60 S.W.3d at 728. Our Supreme Court has encouraged parties to an MDA to address resolution of issues they can foresee. *Id.* at 729 n.5.

[6] Fees in actions to modify an existing alimony award are subject to the same considerations applicable to an initial award of alimony. *See Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *19 (Tenn. Ct. App. Aug. 23, 2004) (explaining the statutory bases for fees in modification cases).

*Inman v. Inman*, 811 S.W.2d 870, 874 (Tenn. 1991); *Lindsey v. Lindsey*, 976 S.W.2d 175, 181 (Tenn. Ct. App. 1997). As our courts have repeatedly made clear, the decision of whether or not to award fees in support modification proceedings is discretionary with the trial court. *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989); *Sannella v. Sanella*, 993 S.W.2d 73, 77 (Tenn. Ct. App. 1999).

However, the trial court's award of attorney's fees herein was not based on these principles. Instead, the court awarded fees based upon its interpretation of the fee provision of the MDA, which provided, "Should litigation be necessary to enforce any provision of this agreement, the prevailing party shall be entitled to attorney fees and discretionary costs." The court found that Mr. Storm had breached the MDA by failing to pay Ms. Storm in accordance with that agreement, awarded her arrearages, and awarded her fees as the prevailing party. Mr. Storm has not challenged the arrearage award. While we agree with the trial court's general interpretation of the MDA's fee provision, we conclude that Ms. Storm is entitled only to that portion of her attorney's fees that are directly related to the issues on which she prevailed. On remand, the trial court should re-calculate the award of fees based upon that distinction.

## III. CONCLUSION

This case is remanded to the trial court for reconsideration of the alimony obligation of Mr. Storm in light of our holding that the MDA did not constrain the court's authority to reduce the total obligation as justified by the circumstances. Costs on appeal are taxed to the appellee, Jane Ann Storm.

_____
PATRICIA J. COTTRELL, JUDGE