IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 21, 2001 Session

## JANET CAROL SCARBROUGH v. EDD SHERROD SCARBROUGH

**Direct Appeal from the Chancery Court for Weakley County**
**No. 14884; The Honorable William Michael Maloan, Chancellor**

—————————

**No. W2000-01807-COA-R3-CV - Filed June 8, 2001**

—————————

This appeal involves issues stemming from the parties' divorce. The trial court terminated Husband's obligation to pay rehabilitative alimony. In addition, the trial court valued Husband's life estate in certain real property at $200,000.00, and the court awarded Wife $100,000.00. Both parties appeal the decision of the trial court. For the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

James H. Bradberry, Dresden, for Appellant

L. L. Harrell, Jr., Trenton, for Appellee

### OPINION

### Facts and Procedural History

Janet Carol Scarbrough (Wife) and Edd Sherrod Scarbrough (Husband) were married on August 15, 1977. Wife filed for divorce on December 3, 1996, and Husband counter-claimed. A divorce decree was entered by the trial court on July 16, 1998. The trial court granted both parties a divorce pursuant to section 36-4-129 of the Tennessee Code. The trial court also awarded Husband the real estate and other property totaling $294,450.00, and Wife was awarded property totaling $52,247.00. In order to equitably divide the marital property, the trial court further awarded Wife $120,000.00 to be paid by Husband. The court also deducted the $76,000.00 debt on farm equipment from the marital estate and ordered Husband to pay Wife $100,000.00 instead of $120,000.00 as previously ordered. Husband and Wife both appealed the decision of the trial court.

This court held, in relevant part, that Wife was an appropriate candidate for rehabilitative alimony. Accordingly, we ordered that Husband was to pay Wife rehabilitative alimony of $700.00 per month for three years. Furthermore, we held that Husband's life estate in certain real property was marital property, and we remanded the case to the trial court with instructions to determine the value of the life estates and to make an equitable division thereof.

In February 2000, Wife filed a petition for contempt, alleging that Husband had failed to pay alimony for January and February. On February 10, 2000, Husband filed a Petition to Reduce and/or Terminate Alimony. Wife filed her answer to this petition on April 27, 2000. Husband filed a Chapter 12 Bankruptcy Petition in the Federal Bankruptcy Court at Jackson on May 8, 2000. On June 6, 2000, Wife filed another petition for contempt, alleging that Husband failed to make his May and June alimony payments. On June 28, 2000, a hearing was held and the trial court relieved Husband of his alimony obligation. The trial court also valued the Husband's life estates at $200,000.00 and awarded Wife the sum of $100,000.00 as an equitable division of marital property.

Both parties appeal the judgment of the court below and present the following issues, as we perceive them, for our review:

*Wife's issues:*
1. Whether the trial court erred in terminating Husband's obligation to pay Wife rehabilitative alimony in the amount of $700.00 per month for three years.
2. Whether the trial court erred in failing to designate the award of $100,000.00 to Wife as alimony in solido.

*Husband's issues:*
1. Whether the trial court erred in failing to reduce the value of Husband's life estate by the amount of mortgage owing upon the property.
2. Whether the trial court erred in awarding the Wife a judgment based upon the life estate instead of awarding her one-half of any income received from the property.

**Standard of Review**

When a civil action is heard by a trial judge sitting without a jury, our review of the matter is *de novo* on the record, accompanied by a presumption of correctness of the findings below. See Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988); T.R.A.P. 13(d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. See Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's conclusions that are based on undisputed facts. See NCNB Nat'l Bank v. Thrailkill, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

**Law and Analysis**

Wife asserts that the trial court erred in terminating Husband's obligation to pay her rehabilitative alimony in the amount of $700.00 per month for three years. Courts cannot modify or terminate a spousal support award unless there has been a substantial, material change in circumstances since the entry of the previous support decree. See TENN. CODE ANN. § 36-5-101(a)(1); Elliott v. Elliott, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991); Brewer v. Brewer, 869 S.W.2d 928, 935 (Tenn. Ct. App. 1993). In order to be material, a change in circumstances must have been unforeseeable at the time of the decree. See Sannella v. Sannella, 993 S.W.2d 73, 76 (Tenn. Ct. App.1999). It must also affect the obligor spouse's ability to pay or the obligee spouse's need for alimony. See Bowman v. Bowman, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991). The party seeking modification of a support obligation bears the burden of proving there has been a substantial, material change in circumstances and that the modification is warranted. See Watters v. Watters, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). If the petitioner meets this burden, the court then utilizes the same factors in section 36-5-101(d)(1) of the Tennessee Code that were considered in making the initial award to determine the appropriate modification. See Brewer, 869 S.W.2d at 936; Norvell v. Norvell, 805 S.W.2d 772, 774 (Tenn. Ct. App. 1990).

While section 36-5-101(d)(1) of the Tennessee Code permits the consideration of many factors, the recipient spouse's demonstrated need for spousal support is the single most important factor. See Sannella, 993 S.W.2d at 76; Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). The obligor spouse's ability to pay is another important factor. See Smith v. Smith, 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995). An alimony recipient's increased income alone is not sufficient to warrant reducing or terminating support, McCarty v. McCarty, 863 S.W.2d 716, 720 (Tenn. Ct. App. 1992); Norvell, 805 S.W.2d at 775, nor may an obligor spouse avoid paying support by voluntarily assuming new financial obligations. See Elliot, 825 S.W.2d at 91; Jones v. Jones, 784 S.W.2d 349, 353 (Tenn. Ct. App. 1989).

Because support decisions are factually driven and involve considering and balancing numerous factors, we give wide latitude to the trial court's discretion. See Watters, 22 S.W.3d at 821; Sannella, 993 S.W.2d at 76. We review a trial court's decision according to the familiar standard per Rule 13(d) of the Tennessee Rules of Appellate Procedure, and we will uphold the trial court's decision unless it is based on an improper application of the law or is against the preponderance of the evidence. See Cranford, 772 S.W.2d at 50; Luna v. Luna, 718 S.W.2d 673, 675 (Tenn. Ct. App. 1986).

Upon review of the record in this case, we find no error in the trial court's decision to terminate Husband's obligation to pay rehabilitative alimony. We note that Husband is having serious financial difficulties, and, as a result, he has filed for bankruptcy since we determined that he should pay rehabilitative alimony. On the other hand, Wife has remarried, and her new husband contributes over $50,000.00 per year to the family income. It has been held that remarriage is a substantial and material change of circumstances. Struck v. Struck, 958 S.W.2d 352, 353 (Tenn. Ct. App. 1997). We also note that Wife testified that her needs have changed substantially since her

remarriage, as she has a new husband to help pay living expenses. We conclude that Husband has met his burden of proving that there has been a substantial, material change in circumstances to warrant the termination of his alimony obligation. Therefore, this issue is without merit.

Alternatively, Wife argues that if the trial court was justified in terminating the alimony award prospectively, our grant of rehabilitative alimony should be given retroactive effect to July 1998, which was the date of the original divorce hearing. Wife cites Gotten v. Gotten, 748 S.W.2d 430 (Tenn. Ct. App. 1987), as support for this proposition. While Wife is correct in one respect, she overlooks that portion of the opinion where we stated "we hold that a judgment of the appellate court reversing or modifying the trial court judgment providing for periodic payments of alimony or child support is effective as of the date of the trial court judgment, ***unless the appellate court judgment specifies otherwise***." Id. at 431 (emphasis added). When the instant case was first before us, we clearly held that "[t]he alimony payments will commence on the first day of the month following the filing of this Opinion." Scarbrough v. Scarbrough, No. W1998-00167-COA-R3-CV, 1999 WL 1567097, at *5 (Tenn. Ct. App. Dec. 14, 1999). Thus, it is clear that we designated the alimony payments to begin on January 1, 2000. Accordingly, Wife's argument that the grant of alimony should be given retroactive effect is without merit. Next, Wife asserts that the trial court erred in failing to designate the $100,000.00 award to her as alimony in solido. The court below valued Husband's life estates at $200,000.00, and awarded Wife $100,000.00 as a division of marital property. Wife takes no exception to the value that the court placed on Husband's life estate. Instead, Wife argues that the trial court should have designated her award as alimony in solido so the award will not be discharged in bankruptcy.

Trial courts have broad discretion to determine whether alimony is appropriate and, if so, the nature, amount, and duration of the alimony awarded. See Anderton v. Anderton, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998) (citing Garfinkel v. Garfinkel, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); Jones v. Jones, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989)). There are no hard and fast rules to be applied in cases involving a request for alimony. See id. (citing Crain v. Crain, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996); Stone v. Stone, 409 S.W.2d 388, 392-93 (Tenn. Ct. App. 1966)). Rather, decisions regarding alimony hinge on the unique facts of the case and involve the careful consideration and balancing of many factors, including those set forth in section 36-5-101(d)(1) of the Tennessee Code. See id. at 683 (citing Hawkins v. Hawkins, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994); Loyd, 860 S.W.2d at 412)). These factors are as follows:

 (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
 (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
 (C) The duration of the marriage;
 (D) The age and mental condition of each party;
 (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

TENN. CODE ANN. § 36-5-101(d)(1) (Supp. 2000). The most important factors that a court must consider when determining whether to award alimony are (1) the need of the spouse seeking support and (2) the ability of the other spouse to pay support. See Young v. Young, 971 S.W.2d 386, 391 (Tenn. Ct. App. 1997); Watters, 959 S.W.2d at 593; Smith v. Smith, 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995).

We note that the trial judge was well aware that Husband had filed for bankruptcy when he valued Husband's life estate and divided the property. Upon review of the record, we find that the trial judge did not abuse his discretion in failing to designate the award as alimony in solido.

*Husband's Issues*

Husband asserts that the trial court erred in failing to reduce the value of his life estate by the amount of mortgage owing upon the property. The trial court valued the life estate at $200,000.00, and the court awarded the wife $100,000.00. Trial courts have the authority to apportion marital debts in the same way that they divide marital assets. See Mahaffey, 775 S.W.2d 618, 623-24 (Tenn. Ct. App. 1989). Trial courts are entitled to broad discretion in adjudicating the rights of parties in a divorce case. See Fisher v. Fisher, 648 S.W.2d 244, 246 (Tenn. 1983); Harrington v. Harrington, 798 S.W.2d 244, 245 (Tenn. Ct. App. 1990). Decisions based upon this discretion are entitled to great weight. See Kelly v. Kelly, 679 S.W.2d 458, 460 (Tenn. Ct. App. 1984); Edwards v. Edwards, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). Upon review of the record, there is no indication that the trial court abused its discretion. The court considered the testimony at trial from the various real estate appraisers, and the court also considered the annuity and valuation tables in the Tennessee Code. The court's value of $200,000.00 placed on the life estate is within the court's discretion, and we find no error in this valuation and division of property.

Finally, Husband asserts that the trial court erred in awarding Wife a judgment based upon the life estate instead of awarding her one-half of any income received from the property. When we remanded this case, we instructed the trial court that the life estate should be treated as marital property. We further instructed the trial court to value and equitably divide the life estate. Upon remand, the court did exactly as instructed, valuing the life estate at $200,000.00 and awarding Wife

$100,000.00. Husband testified at trial that he received no income whatsoever from his son for his interest in the life estate. While this may be true, it was Husband's choice to enter into an agreement so that his son would never have to pay him anything for his life estate. Nevertheless, Husband retains a life estate in said property, and the life estate does in fact have value. Husband cannot circumvent this fact by choosing not to receive income from his son for the life estate. As a result, we find no error in the trial court's valuation and division of the life estate.

### Conclusion

Accordingly, for the aforementioned reasons, we affirm the judgment of the court below. Costs on appeal are taxed one-half to Wife, and one-half to Husband, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE