IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 1999 Session

# WALTER JACOB HANSELMAN, JR. v. LINDA ELLEN HANSELMAN

**Appeal from the Chancery Court for Hickman County**
**No. 951280     Donald P. Harris, Judge**

---

**No. M1998-00919-COA-R3-CV - Filed March 15, 2001**

---

This appeal involves a father's effort to reduce his child support and spousal support obligations. Approximately one year after the parties were divorced, the father filed a petition in the Hickman County Chancery Court seeking a downward modification of his support obligations because his income had declined due to his employer's cutbacks in the availability of overtime work. Following a bench trial, the trial court denied the father's petition because he had failed to establish a significant variance in his child support obligations and because he had failed to demonstrate that a substantial and material change in the parties' circumstances warranting a reduction in spousal support had occurred. We agree with the trial court's findings and affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Neal Lovlace, Centerville, Tennessee, for the appellant, Walter Jacob Hanselman, Jr.

Douglas Thompson Bates, III, Centerville, Tennessee, for the appellee, Linda Ellen Hanselman.

**OPINION**

Linda Hanselman and Walter Hanselman were divorced on August 15, 1996, by the Chancery Court for Hickman County. Ms. Hanselman received the divorce because Mr. Hanselman had committed adultery. The trial court granted custody of the parties' two minor children to Ms. Hanselman and, after determining that Mr. Hanselman was capable of earning $90,000 per year, directed him to pay $1,675 per month in child support until the older child was no longer entitled to support and then $1,100 per month thereafter. The trial court also ordered Mr. Hanselman to pay Ms. Hanselman spousal support in the amount of $1,000 per month for thirty-six months and then long-term spousal support in the amount of $600 per month. In April 1997, Mr. Hanselman married Cindy Grove, one of his co-workers at Saturn Corporation.

In July 1997, Mr. Hanselman filed a petition seeking to reduce his spousal and child support obligations. He asserted that Saturn Corporation had changed its policy regarding overtime work and that he had lost income as a result of this policy change. Ms. Hanselman responded by filing a petition requesting an increase in Mr. Hanselman's spousal and child support obligations because of his marriage three months earlier to Ms. Grove. Following a hearing in March 1998, the trial court denied both parties' petitions requesting alterations in spousal and child support but granted Mr. Hanselman's request to modify his visitation schedule. Mr. Hanselman asserts on this appeal that the trial court erred by refusing to reduce his spousal and child support obligations.

# I.
## MR. HANSELMAN'S CHILD SUPPORT OBLIGATION

Mr. Hanselman first asserts that the trial court erred by failing to reduce his child support prospectively because of the anticipated impact the change in Saturn Corporation's overtime policy was going to have on his future income. The trial court declined to modify Mr. Hanselman's child support obligation without proof that his income has actually been reduced and because he had failed to demonstrate a significant variance in his child support payments. We have determined that the trial court's decision is perfectly consistent with the child support guidelines.

## A.

Trial courts have discretion to set the amount of child support within the strictures of the child support guidelines promulgated by the Tennessee Department of Human Services pursuant to Tenn. Code Ann. § 36-5-101(e)(2) (Supp. 2000). *Berryhill v. Rhodes*, 21 S.W.3d 188, 192 (Tenn. 2000). Accordingly, the appellate courts review decisions involving child support using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the trial court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). While we will set aside a discretionary decision if it does not rest on an adequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

The child support guidelines establish the presumptively appropriate amount of child support using a formula in which the two key variables are the number of minor children requiring support and the net income of the "obligor parent" – the parent who will be required to pay this support. Tenn. Comp. R. & Regs. r. 1240-2-4-.02(7) (1994); *Anderton v. Anderton*, 988 S.W.2d 675, 680 (Tenn. Ct. App. 1998). The obligor parent's income is the most important variable. *Turner v. Turner*, 919 S.W.2d 340, 344 (Tenn. Ct. App. 1995). Once the obligor parent's income has been determined, the child support guidelines require the courts to calculate the amount of the child support using a fixed percentage prescribed in the guidelines based on the number of children requiring support. Tenn. Comp. R. & Regs. r. 1240-2-4-.03(5) (1994). In most circumstances, the result of this calculation becomes the obligor parent's child support obligation. However, in

circumstances not germane to this case, the guidelines permit the courts to deviate from the result of the formula if they file detailed, written findings explaining why the strict application of the guidelines is not appropriate and why deviating from the guidelines would be in the child's best interests. Tenn. Comp. R. & Regs. r. 1240-2-4-.02(7), -.04(2) (1994).

In 1994, the Tennessee General Assembly prescribed the criteria for determining whether an existing child support order should be modified.[1] For all cases heard on or after July 1, 1994, Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2000) permits modifications only upon proof that there is a "significant variance" between the current child support and the support the guidelines would require the obligor spouse to pay based on the spouse's current income. The child support guidelines define a "significant variance" as "at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3) (1994).

**B.**

Applying the child support guidelines is straightforward when the obligor parent's income is stable. However, it is becoming increasingly common for an obligor spouse's income to fluctuate because, in addition to a base salary, it includes overtime pay, bonuses, stock options, or other types of incentive compensation. Since these sorts of compensation must be included in the obligor spouse's income for the purpose of setting his or her child support obligation, the courts must determine the fairest way to factor the fluctuating income in their child support calculations.

Many obligor parents have insisted that fluctuating income such as overtime pay or bonuses should not be included in their gross income for guideline purposes. This argument has never taken root because Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(a) (1994) requires that incentive compensation must be included in the obligor spouse's income. However, several courts, responding to the uncertainty created by fluctuating income, fashioned floating child support awards based on a percentage of the obligor parent's income at the time. This approach is inconsistent with the statutory requirement that child support must be calculated in a "definite amount" that is paid in installments. Tenn. Code Ann. § 36-5-101(a)(2)(A).

The child support guidelines themselves now provide the approach for dealing with fluctuating income. If an obligor parent receives variable income,[2] such as commissions, bonuses, or overtime pay, the variable income must be "averaged" and added to the obligor spouse's fixed salary. Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(b). The guidelines themselves do not prescribe

---

[1] Act of April 21, 1994, ch. 987, § 3, 1994 Tenn. Pub. Acts 1007, 1010.

[2] The courts cannot force an obligor parent to work overtime even if it is available. Thus, overtime income can only be included in the obligor parent's gross income if he or she actually receives it. *Moore v. Moore*, No. M1999-01680-COA-R3-CV, 1999 WL 1128853, at *8 (Tenn. Ct. App. Dec. 10, 1999) (No Tenn. R. App. P. 11 application filed).

how variable income should be averaged. Therefore, it is left to the courts to determine on a case-by-case basis the most appropriate way to average fluctuating income.[3]

A number of obligor parents, like Mr. Hanselman in this case, have insisted that their income should be averaged over several months or similar short intervals. We have consistently rejected these arguments and have concluded that it is inappropriate to base child support obligations on averages of short duration. *Miglin v. Miglin*, No. 01A01-9802-CH-00080, 1999 WL 398205, at *3 (Tenn. Ct. App. June 18, 1999) (No Tenn. R. App. P. 11 application filed) (rejecting a proposed four month average in favor of a one-year average); *Whitfield v. Whitfield*, No. 03A01-9404-CV-00140, 1994 WL 465796, at *2 (Tenn. Ct. App. Aug. 30, 1994) (No Tenn. R. App. P. 11 application filed) (rejecting a five-pay-period average in favor of a one-year average). Our conclusion that averaging fluctuating income over relative short periods of time is inappropriate rests on two related practical considerations. First, permitting short duration averaging will undermine the stability, predictability, and definiteness of child support. Second, it will prompt more litigation to modify child support because obligee parents will desire increased child support as soon as they can get it. By the same token, obligor parents will desire to reduce their child support as soon as they can justify it.

The child support guidelines employ income averaging in only one narrow circumstance. When courts are calculating an initial child support award, the guidelines require them to calculate the amount of child support that should be paid for the period prior to the effective date of the initial child support order. To calculate the support for this period only, the guidelines direct the courts to use a two-year average of the obligor parent's income. Tenn. Comp. R. & Regs. r. 1240-2-4-.04(1)(e) (1997). While this provision is not strictly applicable to modification proceedings such as this case, it reflects the guidelines' preference for long-term, as opposed to short-term, averaging as the most appropriate way to calculate income that may be subject to fluctuation over time.

This court has consistently approved and applied the approach of averaging fluctuating income for periods of a year or longer when the circumstances warrant it. *Alexander v. Alexander*, 34 S.W.3d 456, 464-65 (Tenn. Ct. App. 2000) (adopting a four-year average); *Norton v. Norton*, No. W1999-02176-COA-R3-CV, 2000 WL 52819, at *7 n.7 (Tenn. Ct. App. Jan. 10, 2000) (No Tenn. R. App. P. 11 application filed) (adopting a two-year average); *Stacey v. Stacey*, No. 02A01-9802-CV-00050, 1999 WL 1097975, at *4 (Tenn. Ct. App. Oct. 6, 1999) (No Tenn. R. App. P. 11 application filed) (adopting a two-year average); *Smith v. Smith*, No. 01A01-9705-CH-00216, 1997 WL 672646, at *3 (Tenn. Ct. App. Oct. 29, 1997) (No Tenn. R. App. P. 11 application filed) (adopting a three-year average); *Bell v. Bell*, No. 01A01-9511-CH-00493, 1996 WL 548150, at *1 (Tenn. Ct. App. Sept. 25, 1996) (No Tenn. R. App. P. 11 application filed) (adopting a four-year average). Accordingly, we must decide here whether the trial court erred by deciding to make the

---

[3]Averaging is called for only in circumstances where the obligor spouse's income is fluctuating. It would not be appropriate where a spouse's income is steadily declining or increasing. In those circumstances, the obligor parent's child support should be based on his or her current salary. *Price v. Price*, No. M1998-00840-COA-R3-CV, 2000 WL 192569, at *9 (Tenn. Ct. App. Feb. 18, 2000) (No Tenn. R. App. P. 11 application filed).

significant variance calculation in this case based on a multi-year average rather than the shorter period of time requested by Mr. Hanselman.

## C.

Mr. Hanselman testified without contradiction that in April 1997, his employer had reduced the amount of overtime available to him and, as a result, that his monthly income declined during the last eight months of 1997. However, his own evidence regarding his annual income between 1995 and 1997 does not reveal that his annual income fluctuated enough during that time to result in a significant variance between the child support he was then paying and the amount he would be required to pay based on his most current annual salary. The trial court calculated Mr. Hanselman's initial $1,675 per month child support payment based on its conclusion that Mr. Hanselman was able to earn $90,000 per year.[4] In 1997, despite the change in Saturn's overtime policy, Mr. Hanselman earned $87,971.91 – only a 2.3% decrease from the $90,000 in income imputed to him in 1996. This increase is not so great that it creates a 15% variance between the $1,675 per month in child support Mr. Hanselman was paying at the time and the amount of child support he would have been paying had his child support obligation been calculated using his actual gross income for 1996.[5] We would reach a similar result if we based the significant variance calculation on Mr. Hanselman's average annual income between 1995 and 1997.[6]

Mr. Hanselman is not the first Saturn employee who has sought to decrease his child support obligations because of the change in Saturn's overtime policy.[7] These employees have consistently not met with success. As the trial court stated from the bench:

---

[4]In fact, Mr. Hanselman was earning substantially more than $90,000 per year at the time. He earned $96,016 in 1995 and $110,000 in 1996. The trial court's decision to consider his annual gross salary to be $90,000 for the purpose of calculating child support reflects the trial court's decision to discount a portion of the overtime that Mr. Hanselman was earning. While this approach may not have been consistent with the guidelines, neither party took issue with it at the time and have not taken issue with it on this appeal. Had the guidelines been applied properly, Mr. Hanselman's initial child support obligation would have been higher than $1,675 per month.

[5]Had Mr. Hanselman's child support obligation been calculated based on his actual 1997 salary, it would have been approximately $1,635 per month, only $40 per month less than the support he was currently paying. This variance of approximately 2.4% does not amount to a significant variance in child support payments.

[6]Mr. Hanselman's average annual income between 1995 and 1997, based on the trial court's decision to set his 1996 income at $90,000, was $91,329.30. Using this amount, his child support obligation would have been approximately $1,700 month. This amounts to a variance of only 1.5%. If Mr. Hanselman's average annual compensation was based on his actual income between 1995 and 1997, it would have been $97,995.97. His child support based on this amount would be approximately $1,820 per month. This amounts to a variance of only 8.7% which again is insufficient to trigger a change in Mr. Hanselman's child support. These calculations demonstrate why the trial court correctly decided that Ms. Hanselman was not entitled to an increase in child support.

[7]*E.g., Miglin v. Miglin*, 1999 WL 398205, at *2; *McCray v. McCray*, No. 01A01-9612-CH-00553, 1997 WL 431181, at *3 (Tenn. Ct. App. Aug. 1, 1997) (No Tenn. R. App. P. 11 application filed); *Richardson v. Richardson*, No. 01A01-9507-CH-00304, 1995 WL 700196, at *1 (Tenn. Ct. App. Nov. 29, 1995) (No Tenn. R. App. P. 11 application filed) (Tenn. Ct. App. R. 10 Memorandum Opinion).

I've been hearing for seven or eight years now how Saturn is going to quit paying bonuses and overtime is going to be cut out and we're not going to have any more of this risk and reward payment, or whatever you call it. And it may be this is the first time that will happen, I don't know. I've read the papers and I see that they're talking about that kind of thing. But I'm not ever going to listen to anybody predict what they're going to make. You're going to have to come in and show me that, 'This is what I made for this year.' And so far my prediction about what Mr. Hanselman would make is really less than he's actually made in the last three years, if you average those years. And until he makes less than seventy-five thousand, nine hundred dollars some year, which is the amount he'd have to make to reduce his child support fifteen percent, he doesn't need to come back to court.

Based on the evidence, we find no basis to second-guess the trial court's decision to base its decision on Mr. Hanselman's actual, as opposed to projected, income and to use a three-year average of Mr. Hanselman's actual income to determine whether his child support obligation should be changed.[8] Because Mr. Hanselman has failed to demonstrate that he experienced a significant variance in his income since his child support obligation was imposed, the trial court correctly denied his petition for a downward adjustment under the child support guidelines. Therefore, we affirm the trial court's denial of Mr. Hanselman's request to decrease his child support obligation.

## II.
### MR. HANSELMAN'S SPOUSAL SUPPORT OBLIGATION

Mr. Hanselman also asserts that the trial court erred by declining to reduce his spousal support. He asserts that the trial could should have reduced this support obligation because of his loss of overtime pay and because Ms. Hanselman has refused to seek gainful employment. We have determined that Mr. Hanselman has failed to demonstrate how the trial court misapplied the law or the facts in this case.

Courts cannot modify or terminate a spousal support award unless there has been a substantial, material change in circumstances since the entry of the previous support decree. Tenn. Code Ann. § 36-5-101(a)(1); *Elliott v. Elliott*, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991); *Brewer v. Brewer*, 869 S.W.2d 928, 935 (Tenn. Ct. App. 1993). In order to be material, a change in

---

[8] Mr. Hanselman would fare no better even if the calculations were made using his projected income for 1998 based on his earnings during the first two months of 1998. Based on his actual 1998 earnings of $15,856, Mr. Hanselman's projected earnings for 1998 would have been $95,136. This is only $80 less than his annual earnings in 1995 and $5,136 more than his imputed earnings in 1996. Including this projected income into a four-year average, the variance between the $1,675 per month in child support that Mr. Hanselman is currently paying and the amount he would be paying based on his average income over four years ranges between 2.7% and 7.8% depending on whether Mr. Hanselman's actual or imputed 1996 earnings are used.

circumstances must have been unforeseeable at the time of the decree. *Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). It must also affect the obligor spouse's ability to pay or the obligee spouse's need for alimony. *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

The party seeking modification of a support obligation bears the burden of proving there has been a substantial, material change in circumstances and that the modification is warranted. *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). If the petitioner meets this burden, the court then utilizes the same factors in Tenn. Code Ann. § 36-5-101(d)(1) that were considered in making the initial award to determine the appropriate modification. *Brewer v. Brewer*, 869 S.W.2d at 936; *Norvell v. Norvell*, 805 S.W.2d 772, 774 (Tenn. Ct. App. 1990).

While Tenn. Code Ann. § 36-5-101(d)(1) permits the consideration of many factors, the recipient spouse's demonstrated need for spousal support is the single most important factor. *Sannella v. Sannella*, 993 S.W.2d at 76; *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). The obligor spouse's ability to pay is another important factor. *Smith v. Smith*, 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995). An alimony recipient's increased income alone is not sufficient to warrant reducing or terminating support, *McCarty v. McCarty*, 863 S.W.2d 716, 720 (Tenn. Ct. App. 1992); *Norvell v. Norvell*, 805 S.W.2d at 775, nor may an obligor spouse avoid paying support by voluntarily assuming new financial obligations. *Elliot v. Elliot*, 825 S.W.2d at 91; *Jones v. Jones*, 784 S.W.2d 349, 353 (Tenn. Ct. App. 1989).

Because support decisions are factually driven and involve considering and balancing numerous factors, we give wide latitude to the trial court's discretion. *Watters v. Watters*, 22 S.W.3d at 821; *Sannella v. Sannella*, 993 S.W.2d at 76. We review a trial court's decision according to the familiar Tenn. R. App. P. 13(d) standard, and we will uphold the trial court's decision unless it is based on an improper application of the law or is against the preponderance of the evidence. *Cranford v. Cranford*, 772 S.W.2d at 50; *Luna v. Luna*, 718 S.W.2d 673, 675 (Tenn. Ct. App. 1986).

We have not been provided the record of the original divorce proceeding, and the parties have not otherwise explained the basis for the trial court's original spousal support decision. Thus, we cannot reliably determine whether the trial court set the spousal support on the assumption that Ms. Hanselman would undertake to rehabilitate herself and that Mr. Hanselman's spousal support obligation would be reduced if she did. It would appear that the trial court took this into consideration when it determined that Mr. Hanselman's spousal support obligation would be decreased from $1,000 per month to $600 per month three years after the entry of the divorce decree. This being the case, we find that Mr. Hanselman has failed his burden of demonstrating a substantial and material change in the parties' circumstances since the entry of the initial divorce decree.

## III.
### DAMAGES FOR A FRIVOLOUS APPEAL

Ms. Hanselman has requested this court to find that Mr. Hanselman's appeal is frivolous and to award her damages pursuant to Tenn. Code Ann. § 27-1-122 (2000). Parties should not be forced to bear the cost and vexation of baseless appeals. *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999); *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). Accordingly, in 1975, the General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. Determining whether to award these damages is a discretionary decision. *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985).

A frivolous appeal is one that is devoid of merit, *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or one that has no reasonable chance of succeeding. *Davis v. Gulf Ins. Group*, 546 S.W.2d at 586; *Jackson v. Aldridge*, 6 S.W.3d at 504; *Industrial Dev. Bd. v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). Thus, an appeal in which the reviewing court's ability to address the issues raised is undermined by the appellant's failure to provide an adequate record is deemed frivolous because it has no reasonable chance of succeeding. *Brooks v. United Uniform Co.*, 682 S.W.2d 913, 915 (Tenn. 1984); *McDonald v. Onoh*, 772 S.W.2d at 914; *Fields v. Fields*, No. 86-131-II, 1987 WL 7332, *3 (Tenn. Ct. App. Mar. 6, 1987) (No Tenn. R. App. P. 11 application filed).

Based on our review of the record and the issues raised in Mr. Hanselman's brief, we have concluded that his appeal is not frivolous because it raises a still unsettled issue regarding the proper procedure for averaging fluctuating income for the purpose of determining child support. Accordingly, we deny Ms. Hanselman's motion to award her damages for a frivolous appeal pursuant to Tenn. Code Ann. § 27-1-122.

## IV.

We affirm the judgment denying Mr. Hanselman's request for modifications in his spousal and child support and remand the case to the trial court for further proceedings consistent with this opinion. We also tax the costs of this appeal to Walter Jacob Hanselman, Jr. and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE