IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs November 1, 2021

## DOUGLAS PATRICK HOERING v. MARLITA DAPAR HOERING

**Appeal from the Probate & Family Court for Cumberland County**
**No. 2012-PF-2991     Larry M. Warner, Judge**

_____

### No. E2021-00529-COA-R3-CV

_____

In this post-divorce action, Douglas Patrick Hoering ("Husband") petitioned for a modification of his periodic alimony payment to Marlita Dapar ("Wife"), alleging that "she is no longer suffering from a financial disadvantage, as she has obtained housing and support from her paramour for some time." The trial court ordered a reduction in Husband's monthly spousal support payment from $1,200 to $600, in a judgment containing no findings of fact. Based on our de novo review of the record, we hold that Husband failed to demonstrate a substantial and material change of circumstances that would warrant decreasing his payment of alimony in futuro to Wife. The judgment of the trial court is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate & Family Court Reversed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and CARMA DENNIS MCGEE, J., joined.

Howard L. Upchurch and Stacy H. Farmer, Pikeville, Tennessee, for the appellant, Marlita Dapar.

Jonathan R. Hamby, Crossville, Tennessee, for the appellee, Douglas Patrick Hoering.

## OPINION

### I. BACKGROUND

The parties were divorced in 2013. At that time, they presented a marital dissolution agreement ("MDA") to the trial court, which approved and incorporated it into the divorce

decree. The MDA's spousal support section provided, in its entirety, that "Husband shall pay to Wife the amount of $1,200.00 per month as alimony *in futuro* until the death or remarriage of Wife, subject to the following: the amount of alimony *in futuro* and child support together shall not exceed the total amount of $1,200.00 per month."

Husband filed his petition to modify alimony on January 27, 2020. The sole allegation supporting his petition states "[t]hat a material change in circumstance has occurred which would warrant a modification of said alimony. Specifically, the [Wife] is no longer suffering from a financial disadvantage, as she has obtained housing and support from her paramour for some time." Wife denied this allegation, and a brief hearing followed, at which the only witnesses were Husband and Wife. At the conclusion, the trial court stated, without elaboration: "I believe the Husband's entitled to some relief. I'm going to reduce his alimony to $600 a month."

The trial court's final judgment contains no findings of fact. It states only as follows, in pertinent part:

> Following proof, review of the record, arguments of counsel, and statements of both parties, the Court finds the following:
>
> 1. That the Petition to Modify Alimony is well-taken.
>
> 2. That the [Husband's] alimony obligation to the [Wife] shall be reduced from $1,200.00 per month to a sum of $600.00 monthly.

## II. ISSUES PRESENTED

Wife appealed and presents the following issue: whether the trial court erred in granting Husband's petition to modify and decreasing the amount of alimony in futuro he should be required to pay.

## III. STANDARD OF REVIEW

As this Court has observed,

> Our Supreme Court set out the standard of review to be applied in cases involving a request for modification of a spousal support order stating:
>
> > Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors," *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App.

1989), a trial court's decision to modify support payments is given "wide latitude" within its range of discretion, *see Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). In particular, the question of "[w]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (citations omitted). Accordingly, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *see also Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion."). When the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them. *See, e.g., Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d).

*Schrade v. Schrade*, No. E2016-01105-COA-R3-CV, 2017 WL 568545, at *4 (Tenn. Ct. App. Feb. 13, 2017) (quoting *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)).

## IV. ANALYSIS

We first address the trial court's failure to make any findings of fact in this case. "Without findings of fact from a trial court, we have nothing upon which to presume correctness." *Norris v. Norris*, No. E2014-02353-COA-R3-CV, 2015 WL 9946262, at *2 (Tenn. Ct. App. Aug. 24, 2015). Tennessee Rule of Civil Procedure 52.01 provides that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Since its amendment effective in 2009, "the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party." *Spigner v. Spigner*, No. E2013-02696-COA-R3-CV, 2014 WL 6882280, at *9–10 (Tenn. Ct. App. Dec. 8, 2014). As we have stated too often before, "[t]his Court has previously held that the requirement to make findings of fact and conclusions of law is 'not a mere technicality.'" *E.g., Horine v. Horine,* No. E2013-02415-COA-R3-CV, 2014 WL 6612557, at *7 (Tenn. Ct. App. Nov. 24, 2014); *Spigner*, 2014 WL 6882280, at *9.

3

Our Supreme Court has explained the important reasons for Rule 52's mandate that trial courts make specific findings of fact and conclusions of law as follows:

> Requiring trial courts to make findings of fact and conclusions of law is generally viewed by courts as serving three purposes. 9C Charles A. Wright et al., *Federal Practice and Procedure* § 2571, at 219–223 (3d ed.2005). First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. *See Estate of Bucy v. McElroy*, No. W2012–02317–COA–R3–CV, 2013 WL 1798911, at *3–4 (Tenn. Ct. App. Apr. 26, 2013) (noting that the Rule 52.01 requirement facilitates appellate review); *Hardin v. Hardin*, No. W2012–00273–COA–R3–CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012) (same); *In re K.H.*, No. W2008–01144–COA–R3–PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (recognizing that without findings and conclusions appellate courts are left to wonder about the basis of a trial court's decision); *In re M.E.W.*, No. M2003–01739–COA–R3–PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004) (same); 9C *Federal Practice and Procedure* § 2571, at 219 (recognizing that specific findings by the trial court facilitate appellate review). Second, findings and conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making." 9C Federal Practice and Procedure § 2571, at 221–22. A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts." *Id.* at 222. Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal. *Hardin*, 2012 WL 6727533, at *5.

*Lovlace v. Copley*, 418 S.W.3d 1, 34-35 (Tenn. 2013) (bracketed material in original omitted); *accord Machic v. Machic*, No. E2017-01477-COA-R3-CV, 2018 WL 1445981, at *2 (Tenn. Ct. App. Mar. 23, 2018). As this Court has recently reiterated,

> The essential purposes of courts and judges are to afford litigants a public forum to air their disputes, and to adjudicate and resolve the disputes between the contending parties. To carry out these purposes, judges must arrive at their decisions by applying the relevant law to the facts of the case. Because making these decisions is a "**high judicial function**," a court's decisions must be, **and must appear to be**, the result of the exercise of the trial court's own judgment.

The manner in which judges arrive at their decisions "gives formal and institutional expression to the influence of reasoned argument in human affairs." In addition to expecting judges to be "fair, impartial, and engaged," the litigants, the bench and bar, and the public **expect them to explain why a particular result is correct based on the applicable legal principles**.

*In re Nathan C.*, No. E2019-01197-COA-R3-PT, 2020 WL 730623, at *3 (Tenn. Ct. App. Feb. 12, 2020) (emphasis in original; quoting *Smith v. UHS of Lakeside, Inc*., 439 S.W.3d 303, 312-13 (Tenn. 2014); internal citations in original omitted).

As the Supreme Court stated in *Lovlace*,

One remedy appellate courts typically apply when a trial court's factual findings fail to satisfy the Rule 52.01 requirement is to remand the case to the trial court with directions to issue sufficient findings and conclusions. *See, e.g., Pandey v. Shrivastava*, No. W2012–00059–COA–R3–CV, 2013 WL 657799, at *5–6 (Tenn. Ct. App. Feb. 22, 2013); *Hardin*, 2012 WL 6727533, at *5–6; *In re Connor S.L.*, No. W2012–00587–COA–R3–JV, 2012 WL 5462839, at *4–5, *7 (Tenn. Ct. App. Nov. 8, 2012); *Simpson v. Fowler*, No. W2011–02112–COA–R3–CV, 2012 WL 3675321, *4–5 (Tenn. Ct. App. Aug. 28, 2012). Alternatively, an appellate court may choose to remedy the trial court's deficient factual findings by conducting a de novo review of the record to determine where the preponderance of the evidence lies.

418 S.W.3d at 36. In the present case, the record contains a transcript of the hearing, so we are able to review the evidence presented verbatim, on a single legal issue that is in this instance relatively clear and straightforward. Consequently, "[i]n the interest of judicial economy and to save the parties additional expenses, we elect to proceed and make our own determinations regarding where the preponderance of evidence lies as necessary." *Norris*, 2015 WL 9946262, at *3.

The trial court's award of alimony in futuro is governed by Tenn. Code Ann. § 36-5-121(f), which provides in pertinent part:

(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible . . .

5

(2)(A) An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances.

"A court may not modify or terminate a spousal support award until it first finds that a sufficient change in circumstances has occurred since the entry of the original support decree." *Schrade*, 2017 WL 568545, at *4 (citing *Bogan*, 60 S.W.2d at 727-28). "Thus, in most cases, the party seeking modification of an alimony award must initially prove that a substantial and material change in circumstances has occurred." *Id.*

Tennessee Code Annotated section 36-5-121(f)(2)(B) provides that

[i]n all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:

(i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or

(ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

However, in this case, nowhere in the record is there any reference or discussion regarding the statutory presumption of section 36-5-121(f)(2)(B). Husband did not invoke it, nor did he ever argue that the presumption should be applied. He does not refer to subsection (f)(2)(B) on appeal. Our review is therefore limited to whether Husband demonstrated a substantial and material change in circumstances.

The proof in the record is brief and consists only of the testimony of the parties. The entire transcript of the hearing on Husband's petition for alimony reduction is only 67 pages long. Moreover, a significant portion of it was spent on irrelevant or marginally relevant subjects such as whether Husband was carrying on an affair during the marriage with the woman, twenty years his junior, whom he married the same year as his divorce to Wife. Regarding his finances, Husband testified that he has been on a fixed pension since 2010 (before the divorce), so his income has largely remained unchanged. Husband said

that some of his medically-related expenses had gone up without providing any specific details. He further testified:

> Q. Now, when you filed your petition to modify alimony, you didn't allege that you had a, a, a problem with your ability to pay, did you?
> A. No.
> Q. The only allegation you made was that [Wife] had a paramour that was living in her home, correct?
> A. Yes.

The entirety of Husband's proof regarding his allegation of Wife's cohabitation with her boyfriend is as follows:

> Q. Now, at the time of the filing of this, you had an understanding that she had a male paramour residing in the home; is that correct?
> A. Correct, Carlos.
> Q. All right. And based on largely that and his financial support is why you decided to file this petition to modify?
> A. Correct.
> Q. And you still believe -- you don't know that he lived there or not at this point, do you?
> A. No, but he was there when she was served.

> * * *

> Q. Have you seen any paramour stay the night with [Wife]?
> A. I was never in her bedroom, so I have no idea, but Carlos' vehicle has been there for, for years.
> Q. Do you know where Carlos lives?
> A. He's, I think, on vacation in Portugal or something like that.

> * * *

> Q. Did you see her -- him having things in [Wife's] house?
> A. When I picked up my son, he had his own stuff there.
> Q. What did you see?
> A. Just from the doorway, just his own jackets and stuff like that --
> Q. How do you know it was his jacket?
> A. 'Cause he put it in the kitchen area. Right by the front door is the kitchen.
> Q. Okay. How did you know it was his jacket? You said that --
> A. It came off his --

7

Q. -- your son was there.
A. It came off his body.

Wife explained her relationship and living arrangement as follows:

Q. Okay. And are you -- do you have a -- are you in a, a romantic relationship?
A. No.
Q. Okay. Have you been in a romantic relationship since your divorce?
A. Yes, before.
Q. And who is that romantic relationship with?
A. His name is Carlos. He's from Portugal.
Q. He's from Portugal?
A. Yes.
Q. Where is Carlos today?
A. He's in Portugal.
Q. How long's he been in Portugal?
A. Almost three months, but I was -- yes, three months.
Q. Okay. And when did your relationship end with Carlos?
A. Maybe more than, almost two years.
Q. Okay. And when Carlos is in the United States, where does he live?
A. He lives at the back of my house. I live in 102, and Carlos live[s] in the other apartment at the back of my house, 103.
Q. Okay. When you call your house, is it a house or is it an apartment?
A. Oh, I'm sorry, apartment.
Q. Okay. And do you own or rent that?
A. I rent an apartment.
Q. Okay. And who do you rent that from?
A. I -- Charleston Apartment.
Q. Charleston --
A. Yes.
Q. -- Apartment? Is that where Carlos also rents?
A. Yes.
Q. Okay. So, he has his own address?
A. Yes.
Q. Okay. Has he ever resided with you?
A. No.
Q. Does he have, did he ever keep personal items at your home?
A. No.
O. No? Okay. Did he ever spend consecutive nights at your home?
A. No.

8

Q. Okay. Does he, did he ever keep clothes at your home?
A. No. He has his own house.

\* \* \*

Q. You say you're no longer in a relationship with Carlos; is that correct?
A. Yes.
Q. And that ended sometime after the filing of the petition to modify the alimony; is that right?
A. Yes.
Q. And he's not living in . . . Portugal, he's just visiting there; is that right?
A. Carlos is working in StonePeak. For three months, he has, after three months or four months, they, they have to go back to, to Portugal because of their visa. . . .
Q. But he'll be back?
A. So, he'll be back, so we don't, yeah, he'll be back.
Q. And do you plan on this relationship resuming at that point?
A. No.

After the divorce, Wife filed for bankruptcy. She works at Walmart, earning twelve dollars an hour at the time of the hearing. Wife testified that she is also in poor health and has struggled to pay her medical expenses. She stated that her standard of living is, and has been, lower than when she was married.

As already noted, the parties agreed in their MDA, an enforceable contract, that "Husband shall pay to Wife the amount of $1,200.00 per month as alimony *in futuro* until the death or remarriage of Wife." The trial court approved the MDA and incorporated it into the divorce decree. We hold that Husband did not meet his burden of proving a substantial and material change of circumstances that would warrant decreasing his alimony payments to Wife.

## V. CONCLUSION

The judgment of the trial court is reversed. Costs on appeal are assessed to the appellee, Douglas Patrick Hoering, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

9